

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV–12–1016

| | |
|---|---|
| | **Opinion Delivered** December 11, 2013 |
| JOHN GERARD d/b/a QUALITY CONSTRUCTION | APPEAL FROM THE LONOKE COUNTY CIRCUIT COURT [NO. CV-2011-698] |
| APPELLANT | HONORABLE SANDY HUCKABEE, JUDGE |
| V. | |
| JASON NOVAK and BRITTNEY NOVAK | |
| APPELLEES | AFFIRMED |

## RHONDA K. WOOD, Judge

Disgruntled homeowners, the Novaks, sued a construction company that repaired part of their house's foundation. The circuit court found that the construction company, owned by John Gerard, breached an express warranty because part of the foundation it repaired had cracked. We hold that the $11,500 judgment in the Novaks' favor is not clearly erroneous and affirm.

A realty company hired John Gerard to repair a house's foundation at the back-right corner, which is where the laundry room is located. Gerard leveled the foundation there so new linoleum could be installed. The realty company paid him $5,600 for the job. Gerard gave a written guarantee of "labor and material [for] five yrs. to any owner."

SLIP OPINION

The Novaks bought the house, but four months later saw a crack in the foundation at the back-right corner of the house and noticed that the back door would not stay shut. Mrs. Novak called Gerard, who came by their home. He filled in the cracks and added supporting piers to the foundation in the back-right area where he had worked.

A few months later, the same problems reappeared, plus interior walls began to crack throughout the house. After the parties were unable to resolve the issues, the Novaks sued Gerard for breach of the express warranty. At the bench trial, a structural engineer testified about the house's condition. He said that most of the perimeter wall on the right side of the house and part of the wall on the left side were sinking. This caused the interior walls to crack because the pressure made the foundation bubble up and pushed the walls to the ceiling. He said that to repair the house, the foundation would have to be lifted and placed on bedrock. That would cost $17,500.

Gerard testified that he was hired to fix only the foundation underneath the laundry room. That room is located in the house's back-right corner. However, the problems the engineer testified about were found throughout the house, and Gerard contended that he was not responsible for those. He conceded that if the foundation was cracked where he had worked that he was responsible for repairing the crack. The circuit court found in the Novaks' favor and awarded them $11,500.

Gerard limits his appeal to the circuit court's factual findings, so we will reverse only if those findings were clearly erroneous. *E.g.*, *Nicholson v. Upland Indus. Dev. Co.*,

2012 Ark. 326, __ S.W.3d __.[1] We hold that the court's finding that Gerard was responsible for $11,500 in damages is not, on the record presented to us, clearly erroneous. Gerard does not dispute that the laundry room's foundation is cracked and concedes that he is responsible to fix any problems in the back-right part of the house. He was paid $5,600 to fix the laundry room the first time. Further, the Novaks' estimate said that total repairs to the house would cost $17,500. That estimate included painting and repairing the interior walls, placing 14 steel-support pilings around the entire house ($850 per piling), and stitching the cracked laundry-room foundation.

Scott Person, who gave the estimate, testified that in order to fix the crack in the laundry-room's foundation, he would have to put perimeter pilings around the entire house. Some of the foundation problems were, admittedly, not at the back-right corner where Gerard had worked. However, according to Person, most of the damage was in that part of the house.

Thus, it could be that the circuit court charged Gerard for only half of the steel pilings. That would mean he is responsible for $5,950 (7 x $850). Moreover, the crack would still have to be stitched. To figure that, the court could have added what Gerard charged the first time: $5,600. The two figures added together equal $11,550, which is only $50 more than the damage award.

Whether this is how the court calculated damages does not matter. The point is that the burden is on the appellant to bring up a record sufficient to demonstrate that the

---

[1] He makes a second argument about frustration of purpose. That defense was not raised or ruled on below, so we will not address it now. *E.g.*, *Bank of the Ozarks, Inc. v. Walker*, 2013 Ark. App. 517.

SLIP OPINION

circuit court was in error, and where the appellant fails to meet his burden, this court has no choice but to affirm. *Warnock v. Warnock*, 336 Ark. 506, 988 S.W.2d 7 (1999). Further, in the absence of a showing to the contrary, we presume that the circuit court acted properly and made such findings of fact as were necessary to support its judgment. *Curry v. Pope Cnty. Equalization Bd.*, 2011 Ark. 408, 385 S.W.3d 130. Here, the court's judgment was silent beyond awarding $11,500 to the Novaks. We presume that the court made findings to support that judgment. Just because we are unable to calculate mathematically how the court arrived at that damage figure does not mean that it was clearly wrong. *See, e.g., Page v. Ballard*, 2011 Ark. App. 357, at 5 (noting that "exactness on the proof of damages is not required, and the finder of fact has some latitude in awarding damages when arriving at a figure."). Gerard also could have made a motion for specific findings after the decision under Ark. R. Civ. P. 52 (2013), but he did not. We therefore cannot say, based on the evidence and testimony presented, that the court's judgment was clearly erroneous. Accordingly, we must affirm.

Affirmed.

GLOVER and HIXSON, JJ., agree.

*Thrash Law Firm, P.A.*, by: *Marcus Neil Bozeman*, for appellant.

*Lightle, Raney, Streit & Streit, LLP*, by: *Susannah R. Streit*, for appellee.

